UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TERRYL LIPSEY,                    )    NO. CV 08-2600-CT
                                  )
            Plaintiff,            )    OPINION AND ORDER
                                  )
        v.                        )
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of                   )
Social Security,                  )
                                  )
                                  )
            Defendant.            )
                                  )
_____ )

     For the reasons set forth below, it is ordered that the decision of
defendant Commissioner of Social Security ("the Commissioner") with
respect to plaintiff's application for Disability Insurance Benefits be
affirmed because the Commissioner's decision is supported by substantial
evidence and is free from material legal error.

     With respect to plaintiff's application for Supplemental Security
Income, it is ordered that the matter be **REMANDED** pursuant to sentence
four of 42 U.S.C. Section 405(g) to defendant Commissioner of Social
Security ("the Commissioner") for further administrative action
consistent with this opinion and order.

## SUMMARY OF PROCEEDINGS

On April 28, 2008, plaintiff, Terryl Lipsey ("plaintiff"), filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act"). The parties filed a consent to proceed before the magistrate judge. On August 4, 2008, plaintiff filed a memorandum of points and authorities in support of plaintiff's complaint. On September 2, 2008, the Commissioner filed defendant's brief in opposition.

## SUMMARY OF ADMINISTRATIVE RECORD

1.  Proceedings

On June 23, 2004, plaintiff filed applications for disability insurance benefits and Supplemental Security Income ("SSI"), alleging disability since April 30, 1998 due to a back injury and left leg problems. (TR 89-91, 265-67).[1] The applications were denied initially and upon reconsideration. (TR 33, 37-42).

On April 28, 2005, plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (TR 35-36). On November 29, 2006, plaintiff, represented by an attorney, appeared and testified before an ALJ. (TR 282-310). The ALJ also considered vocational expert ("VE") testimony. On December 6, 2006, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, and thus was not eligible for benefits. (TR 20-28). On January 18, 2007, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision. (TR 13). On February 28, 2008, the request was denied.

---

[1]   "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

2

(TR 7-9).  Accordingly, the ALJ's decision stands as the final decision of the Commissioner.  Plaintiff subsequently sought judicial review in this court.

### 2.  Summary Of The Evidence

The ALJ's decision is attached as an exhibit to this opinion and order and materially summarizes the evidence in the case.[2]

### PLAINTIFF'S CONTENTIONS

Plaintiff contends as follows:

1.   The ALJ erred in finding plaintiff's impairment non-severe; and,

2.   The ALJ failed to provide clear and convincing reasons to reject plaintiff's subjective complaints.

### STANDARD OF REVIEW

Under 42 U.S.C. §405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards.  Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner.  Flaten v. Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995).  The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for

---

[2]   Due to privacy concerns, the Court has redacted the ALJ's opinion to remove plaintiff's social security number.

1   rehearing." 42 U.S.C. §405(g). Remand is appropriate where additional

2   proceedings would remedy defects in the Commissioner's decision.

3   <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989).

4                                  <u>DISCUSSION</u>

5        1.   <u>The Sequential Evaluation</u>

6        A person is "disabled" for the purpose of receiving social security

7   benefits if he or she is unable to "engage in any substantial gainful

8   activity by reason of any medically determinable physical or mental

9   impairment which can be expected to result in death or which has lasted

10  or can be expected to last for a continuous period of not less than 12

11  months." 42 U.S.C. §423(d)(1)(A).

12       The Commissioner has established a five-step sequential evaluation

13  for determining whether a person is disabled. First, it is determined

14  whether the person is engaged in "substantial gainful activity." If so,

15  benefits are denied.

16       Second, if the person is not so engaged, it is determined whether

17  the person has a medically severe impairment or combination of

18  impairments. If the person does not have a severe impairment or

19  combination of impairments, benefits are denied.

20       Third, if the person has a severe impairment, it is determined

21  whether the impairment meets or equals one of a number of "listed

22  impairments." If the impairment meets or equals a "listed impairment,"

23  the person is conclusively presumed to be disabled.

24       Fourth, if the impairment does not meet or equal a "listed

25  impairment," it is determined whether the impairment prevents the person

26  from performing past relevant work. If the person can perform past

27  relevant work, benefits are denied.

28                                      4

1    Fifth, if the person cannot perform past relevant work, the burden

2  shifts to the Commissioner to show that the person is able to perform

3  other kinds of work.   The person is entitled to benefits only if the

4  person is unable to perform other work.  20 C.F.R. §§404.1520, 416.920;

5  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

6       2.   Issues

7            A.   Severe Impairment

8       Plaintiff contends the ALJ erred in finding that plaintiff did not

9  have a severe impairment.

10      A  severe  impairment  or  combination  of  impairments  is  one  which

11  significantly  limits  the  physical  or  mental  ability  to  perform  basic

12  work activities.  20 C.F.R. § 416.920(c).  Basic work activities relate

13  to the abilities and aptitudes necessary to perform most jobs, such as

14  the ability to perform physical functions, the capacity for seeing and

15  hearing, and the ability to use judgment, respond to supervisors, and

16  deal with changes in the work setting.  20 C.F.R. § 416.921(b); Bowen v.

17  Yuckert, 482 U.S. at 141-42. An impairment will be considered nonsevere

18  when  medical  evidence  establish  only  a  "slight  abnormality  or  a

19  combination  of  slight  abnormalities  which  would  have  no  more  than  a

20  minimal  effect  on  an  individual's  ability  to  work  even  if  the

21  individual's  age,  education,  or  work  experience  were  specifically

22  considered."  Social Security Ruling 85-28; Bowen v. Yuckert, 482 U.S.

23  at 154 n.12.

24      Plaintiff is not required to establish total disability at this

25  level of the evaluation.  Rather, the severe impairment requirement is

26  a  threshold  element  which  plaintiff  must  prove  in  order  to  establish

27  disability within the meaning of the Act.  Id. at 146.

28

1                    I.    Disability Insurance Benefits

2        Because plaintiff's disability insurance coverage lapsed on March

3   31, 2000 (TR 23), he must establish that he was disabled for at least a

4   twelve-month period between the alleged onset date, April 30, 1998, and

5   March 31, 2000 (the "relevant time period").  Lingenfelter v. Astrue,

6   504 F.3d 1028, 1033 (9th Cir. 2007).  In deciding whether plaintiff was

7   disabled during the relevant time period, the court may look to reports

8   containing observations made after the period for establishing a

9   disability.  Smith v. Bowen, 849 F.2d 1222, 1225-26 (9th Cir. 1988).

10       Plaintiff has not submitted any evidence relating to his alleged

11  impairments from within the relevant time period.  The only indication

12  in the record that plaintiff sustained his back injury prior to the

13  expiration of benefits are his subjective reports of a work related

14  accident in 1990 or 1994 resulting in an injury to his left leg and

15  lower back.  (TR 247, 259, 262, 289).

16       More recent records reveal that Plaintiff was diagnosed with

17  sciatica in March 2005.  (TR 259-60).  Also, an August 10, 2005 MRI of

18  plaintiff's lumbar spine revealed mild degenerative changes of the L1-L2

19  disc with desiccation of the disc.  In addition, a October 27, 2005

20  nerve conduction test revealed objective evidence of "chronic traumatic

21  axonal mononeuropathy of the Sciatic nerve" resulting from a lesion that

22  was "longstanding."  (TR 247-48).  However, none of this evidence

23  establishes when plaintiff's back injury occurred and thus does not

24  support a finding that plaintiff suffered from a severe impairment

25  within the relevant time period.

26       Since there is no evidence in the record showing that plaintiff

27  suffered from any impairment that significantly limited his ability to

28                                      6

1 perform basic work activities within the relevant time period, the ALJ

2 did not err in concluding that plaintiff did not suffer from a severe

3 impairment during the period of eligibility.  Thus, the ALJ's opinion

4 must be affirmed with respect to plaintiff's application for disability

5 insurance benefits.

6       II.  <u>Supplemental Security Income</u>

7   The fact that plaintiff's disability insurance coverage lapsed on

8 March 31, 2000 does not preclude plaintiff from being eligible for

9 Supplemental Security Income for a disability acquired after 2000.

10   Plaintiff received treatment at Los Angeles County/USC Medical

11 Center in December 2002 and May 2004 for low back pain.  (TR 201-02,

12 211-13).  On March 21, 2005, plaintiff was seen at the Hubert H.

13 Humphrey Comprehensive Health Center for treatment of sciatica; he was

14 referred to the Martin Luther King Jr./Drew Medical Center Orthopedic

15 Department.  (TR 258-62).  He also received urgent care treatment for

16 low back pain and left leg numbness at the Hubert H. Humphrey

17 Comprehensive Health Center in July 2005.  (TR 255-57).

18   In addition, plaintiff was diagnosed with sciatica in March 2005

19 (TR 259-60), and an August 10, 2005 MRI of the lumbar spine revealed

20 mild degenerative changes of the L1-L2 disc with desiccation of the

21 disc.  (TR 249).  An October 27, 2005 nerve conduction test revealed

22 "chronic traumatic axonal mononeuropathy of the Sciatic nerve" resulting

23 from a lesion that was "longstanding."  (TR 247-48).  The results of the

24 nerve conduction test were "consistent with an incomplete lesion of the

25 Sciatic nerve proximal to the knee, affecting the Tibial never primarily

26 and to a lesser extent the Common Peroneal nerve."  (TR 248).  The test

27 further revealed "absent and unobtainable sensory responses and

28

1  extremely low CMAP amplitudes for the Tibial and Peroneal motor nerves."
2  (TR 248).  An examination on October 27, 2005 revealed hyperesthesia on
3  the plantar surface of the left lower extremity, decreased sensation
4  over the dorsum of the left foot and ankle, weakness in the left ankle,
5  and weakness in the left dorsiflexors.  (TR 247).

6      Throughout his treatment history, plaintiff was prescribed
7  medication for his back pain, including Naprosyn, Robaxin, and Tramadol.
8  (TR 212, 256-57, 260-61).

9      In light of this evidence, it appears plaintiff has proven that, at
10  least as of 2005, he suffered from more than a slight abnormality of the
11  back.  Although this evidence may not be enough to prove that plaintiff
12  is disabled within the meaning of the Act, it is sufficient to satisfy
13  the "threshold element" of a "severe" impairment at step two of the
14  sequential evaluation.  Id. at 146.  Accordingly, this action must be
15  remanded to allow for a continuation of the five step sequential
16  evaluation with respect to plaintiff's application for Supplemental
17  Security Income.

18      B.   Subjective Symptom Testimony

19      Plaintiff contends that the ALJ failed to properly evaluate his
20  subjective symptom testimony.

21      The Commissioner evaluates a plaintiff's symptom testimony under a
22  two-step analysis.  First, a plaintiff in a social security case must
23  "produce medical evidence of an underlying impairment which is
24  reasonably likely to be the cause of the alleged pain."  Bunnell v.
25  Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

26      Second, once the plaintiff produces this evidence, the medical
27  findings need not support the severity of the symptoms, and the ALJ may

28                                    8

1    not discredit the plaintiff's allegations of the severity of the pain
2    solely on the ground that the allegations are unsupported by objective
3    medical evidence.   Id. at 346-47.   In the absence of affirmative
4    evidence that a plaintiff is malingering, the Commissioner's reasons for
5    rejecting the plaintiff's testimony must be clear and convincing.
6    Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996).   If the ALJ rejects
7    the plaintiff's allegations as not credible, he or she "must
8    specifically make findings which support this conclusion." Bunnell v.
9    Sullivan, 947 F.2d at 345.   The ALJ must state specifically what symptom
10   testimony is not credible and what facts in the record lead to that
11   conclusion.   Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).   See
12   also Lester v. Chater, 81 F.3d at 834 ("[g]eneral findings are
13   insufficient; rather, the ALJ must identify what testimony is not
14   credible and what evidence undermines the [plaintiff's] complaints").

15        In weighing credibility, the Commissioner may consider, among other
16   things, the extent of treatment or any unexplained failure to seek
17   treatment, inconsistent testimony or inconsistencies between testimony
18   and conduct, and work records.   Orn v. Astrue, 495 F.3d 625, 636 (9th
19   Cir. 2007); Smolen, 80 F.3d at 1284.

20        Here, plaintiff produced evidence that, at least as of 2002, he
21   suffered from a back impairment that was reasonably likely to produce
22   pain.   (TR 189-214, 246-62).   Moreover, there is no evidence of
23   malingering.   Thus, the ALJ was required to give clear and convincing
24   reasons for discounting plaintiff's subjective complaints of impairment.
25   Ultimately, the ALJ rejected plaintiff's credibility as follows:

26        I conclude, based on the inconsistencies in the
27        claimant's statements, his lack of prescribed medication, lack

of current or recent medical treatment, his history of drug abuse, and his work activity after his alleged onset of disability, and his appearance and demeanor at the hearing that he is not fully credible. Accordingly, I give his testimony and statements little weight.

(TR 28).

It appears from the record that plaintiff sought little, if any, treatment for his back injury until 2002. In fact, he only sought sporadic treatment thereafter. Plaintiff gave no reason for failing to seek treatment for an impairment he alleged to be totally disabling. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (claimant's failure to explain failure to seek treatment "can cast doubt on the sincerity of the claimant's pain testimony"); compare Smolen, 80 F.3d at 1284 (finding that plaintiff gave valid reason for failing to seek treatment because she did not have medical insurance).

In addition, plaintiff admitted to engaging in work activity that was inconsistent with the level of impairment he alleged. The "work activity" cited by the ALJ refers to plaintiff's church activities. First, plaintiff testified that he volunteered about two hours of his time every Wednesday to pass out food to the poor at his church. (TR 296-97, 305-06). More significantly, plaintiff works as a telephone operator for his church's "praise-a-thon" for about one week every year. Plaintiff testified that during this week he works an average of six hours a day answering phones. (TR 299-02). This level of work activity is inconsistent with plaintiff's assertion that he is unable to perform even sedentary work. See Orn, 495 F.3d at 636 (in making credibility determination, ALJ may consider inconsistencies between testimony and

10

1  conduct).

2      Finally, the record indicates that in 2003 plaintiff injured his
3  right knee playing volleyball. (TR 189-97). The ability to play
4  volleyball is certainly inconsistent with the extent of impairment
5  plaintiff alleges. See Fair, 885 F.2d at 603 ("If the claimant runs
6  marathons, as an extreme example, an ALJ could reasonably assume that
7  the claimant's pain is not so debilitating as to prevent him from
8  working.").

9      The ALJ's reasons for rejecting plaintiff's credibility were thus
10  clear and convincing. Accordingly, the ALJ did not err in discounting
11  his subjective complaints of impairment.

12                              CONCLUSION

13      After careful consideration of the record as a whole, the
14  magistrate judge concludes that the Commissioner's decision with respect
15  to plaintiff's application for Disability Insurance Benefits is
16  supported by substantial evidence and is free from material legal error.
17  Accordingly, it is ordered that judgment be entered in favor of the
18  Commissioner with respect to plaintiff's application for Disability
19  Insurance Benefits.

20      With respect to plaintiff's application for Supplemental Security
21  Income, this action must be remanded to Commissioner for further
22  administrative proceedings.

23      The decision whether to remand a case for additional evidence is
24  within the discretion of the court. Sprague v. Bowen, 812 F.2d 1226,
25  1232 (9th Cir. 1987). Remand is appropriate if the record is incomplete
26  and additional proceedings would remedy defects in the Commissioner's
27  decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

28                                    11

It appears that additional administrative proceedings are necessary to allow for a continuation of the five step sequential evaluation with respect to plaintiff's application for Supplemental Security Income in light of this Court's determination that plaintiff has established a severe back impairment at step two.

Accordingly, it is ordered that the matter be **REMANDED** pursuant to sentence four of 42 U.S.C. §405(g) to the Commissioner for further administrative action consistent with this opinion.

DATED: *Sept. 3, 2008*

_____
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

12

**SOCIAL SECURITY ADMINISTRATION**
Office of Disability Adjudication and Review

20

### DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|
| | Period of Disability, Disability Insurance Benefits, and Supplemental Security Income |
| Terryl Willie Lipsey | |
| (Claimant) | |
| |  |
| (Wage Earner) | (Social Security Number) |

### JURISDICTION AND PROCEDURAL HISTORY

On June 18, 2004, the claimant filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act (the Act). The claimant also filed an application for supplemental security income payments under Title XVI of the Act on the same date (protectively filed on May 30, 2004). In both applications, the claimant alleged disability beginning April 30, 1998. The claims were denied initially on November 2, 2004. Thereafter, the claimant filed a written request for hearing on January 11, 2005 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*).

A hearing was held before Administrative Law Judge James Lawrill on October 5, 2005 in Los Angeles, California. Notice of the hearing was sent to the claimant on September 2, 2005. The claimant did not appear at the scheduled hearing. Judge Lawrill issued an order of dismissal, dismissing the claimant's request for hearing on October 24, 2005.

The claimant filed a request for review with the Appeals Council on November 7, 2005. On March 2, 2006, the Appeals Council granted review and issued an order of remand, vacating Judge Lawrill's dismissal order and directing that the claimant be given another opportunity for a hearing in this case.

A hearing was held before the undersigned on September 9, 2006 in Los Angeles, California. A vocational expert, Sandra Trost, was present at the hearing. The claimant appeared at this hearing and requested a postponement in order to obtain legal representation. I granted this request and issued a postponement order.

A second hearing was held before me on November 29, 2006 in Los Angeles, California. the claimant appeared and testified at this hearing. An attorney, Alexander Boudov, appeared at the hearing and represents the claimant in this case. A vocational expert, Susan Green, was also present and testified at the hearing.

See Next Page

EXHIBIT

Terryl Willie Lipsey ████████                                    Page 2 of 9

**21**

The claimant has previously applied for disability benefits. Claimant's prior applications were denied, and the determinations made on these prior applications are not reopened[1] (20 CFR 416.1488 and 404.988).

The administrative record is complete.

### ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through March 31, 2000. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

### APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR

---

[1] Claimant previously filed for Title XVI disability benefits on September 7, 1994. Furthermore, claimant filed for Title II disability benefits on September 15, 1994. The time limit for reopening the determinations made in these prior applications is past, so they may not be reopened and revised.

See Next Page



404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

See Next Page



## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.   The claimant does not currently meet the insured status requirements of Title II of the Social Security Act. He last met such requirements on March 31, 2000 and is insured for disability benefits under Title II of the Act through March 31, 2000.**

Sections 216(i) and 223 of the Social Security Act require the claimant to establish disability on or before the date of coverage in order to be entitled to a period of disability and disability insurance benefits.

The claimant's earnings record shows that he had sufficient quarters of coverage to be insured for disability insurance purposes through March 31, 2000. The claimant's alleged onset date of April 30, 1998, falls within the coverage period, thereby making claimant eligible for disability insurance benefits under Title II. However, in order to be entitled to benefits, he must establish that he was disabled on or before March 31, 2000.

**2.   The claimant has not engaged in substantial gainful activity since April 30, 1998, his alleged onset of disability date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).**

The first step of the evaluation process involves the question of whether the claimant is engaging in substantial gainful activity. Substantial gainful activity is defined by agency regulations as work activity that is both substantial and gainful (20 CFR 404.1572). Work activity is gainful when it is done for pay or profit and includes work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b)). Work activity is substantial when it involves significant physical or mental activities (20 CFR 404.1572(a) ). For an employee, the regulations prescribe a certain level of monthly earnings that ordinarily show substantial gainful activity or not (20 CFR 404.1574).[2] For self-employment there are three tests to show substantial gainful activity (20 CFR 404.1575).[3]

---

[2] From 1980-1989, monthly earnings of $300 or more will ordinarily show substantial gainful activity and monthly earnings of less than $190 will ordinarily not show substantial gainful activity; from 1990 through June 2000 monthly earnings of $500 or more will ordinarily show substantial gainful activity and monthly earnings of less than $300 will ordinarily not show substantial gainful activity; from July-December 2000, monthly earnings of $700 or more will ordinarily show substantial gainful activity (20 CFR 404.1574(b)). In 2001, monthly earnings of $740 or more will show substantial gainful activity; in 2002, monthly earnings of $760 or more will show substantial gainful activity, in 2003, monthly earnings of $800 or more will show substantial gainful activity, in 2004, monthly earnings of $810 will show substantial gainful activity; in 2005 monthly earnings of $830 will show substantial gainful activity; and in 2006, monthly earnings of $860 will show substantial gainful activity for disability (other than blindness) (the limits are higher for individuals who are blind)(POMS DI 24001.025)..

[3] The first test is whether the individual has rendered services that are significant to the operation of the business and if he receives a substantial income from the business (20 CFR 404.1575(a)(1)). The second test is whether the individual's work activity, in terms of hours, skills, energy output, efficiency, duties and responsibilities is comparable to that of unimpaired individuals in the same community engaged in the same or similar businesses (20 CFR 404.1575(a)(2)). The third test is whether the individual's work for the business, although not comparable to

See Next Page


EXHIBIT

Agency earnings records reflect that the claimant had earnings in 1998, 1999, 2000, 2003, 2004, and 2005.[4]  However the earnings for the time period after April 30, 1998, are not sufficient to qualify as substantial gainful activity.  This work activity does, however, demonstrate the claimant's ability to perform work activity and will be considered in that context, as discussed below.

**3.   The claimant has the following medically determinable impairments:  Drug abuse in remission and a back disorder (20 CFR 416.920(c)).**

On January 24, 1995, claimant received medical treatment at St. Joseph's Hospital for the chief complaint of a headache (Exh. 2F).  Claimant was examined and no neurological deficits were noted.  Claimant was given Toradol while in the hospital and he was discharged with a prescription for Motrin for 600 mg.

From November 1999 through April 2003, claimant received medical treatment at Los Angeles County USC Healthcare Network (Exh. 3F).  On February 28, 2003, claimant underwent x-rays of the right knee (Exh. 3F/7).  The x-rays revealed no significant bony, articular or soft tissue abnormality.  On March 24, 2003, claimant underwent an MRI of the right knee as a result of a right knee meniscal injury (Exh. 3F/5).  The MRI revealed questionable bony irregularity near the femoral notch on sagittal views only, otherwise negative.  Progress notes indicate the claimant did not have a meniscal tear and that the claimant reported his symptoms were improving (Exh. 3F/2).

From June 2001 through May 2004, claimant received medical treatment at CO/C/LA H. Claude Hudson Comp. Health Center (Exh. 4F).  Claimant received conservative medical treatment for complaints of lower back pain.  In addition, claimant noted he was involved in a car accident in 1994, and an MRI revealed disc pathology (Exh. 4F/3).

On September 14, 2004, an administrator for the State Agency reviewed the medical evidence and  completed a Physical Residual Functional Capacity Assessment form (Exh. 5F).  The administrator opined the claimant had the capacity for medium work, lifting and carrying fifty pounds occasionally and twenty-five pounds frequently and standing and walking up to 6 hours and sitting for up to 6 hours in an 8 hour day.  The administrator opined that the claimant could occasionally climb, stoop, and crouch, and he may frequently balance, kneel, and crawl.

On October 10, 2004, claimant underwent a Complete Psychiatric Evaluation (Exh. 6F).  The evaluation was conducted by Norma R. Aguilar, M.D., a consultative examiner.  The claimant presented himself with the chief complaint of stress.  Claimant stated he used to hear voices

---

that of unimpaired individuals in the same business in the community, would, if performed by an employee paid a salary, would be sufficient to fit within the guidelines for substantial gainful activity for an employee (20 CFR 404.1575(a)(3)).

[4] In 1998 the claimant earned $6,646.76; in 1999 he earned $28.75; in 2000 he earned $738.90; in 2003 he earned $553.50; in 2004 he earned $503.00, and in 2005 he earned $771.00.

The undersigned also notes the above earnings demonstrate the claimant's ability to work.

See Next Page



when he was abusing alcohol and cocaine, and that he attempted to suicide himself in the 1980s
by overdosing (Exh. 6F/1). The claimant denied any psychiatric treatment at present and denied
taking any tranquilizers or antidepressants. Dr. Aguilar diagnosed the claimant as follows:

Axis I:    Alcohol and cocaine abuse, in remission.
Axis II:   Deferred.
Axis III:  Deferred to appropriate specialist.
Axis IV:   None.
Axis V:    Current Global Assessment of Functioning (GAF) score:  70.

Dr. Aguilar further assessed the claimant's functional capabilities. The claimant was deemed
able to understand, remember and carry out short, simple and detailed instructions. He also has
the ability to make judgments on simple work-related decisions. He can interact appropriately
with the public, co-workers, and supervisors. He can also comply with job rules such as safety
and attendance, and he can respond to changes in the normal workplace setting. He can further
respond appropriately to work pressure in a usual setting.

On November 10, 2004, C. H. Dudley, a medical consultant, prepared a Psychiatric Review
Technique form (Exh. 8F). Pursuant to the "B" criteria analysis, Dr. Dudley opined that the
claimant would have no restrictions of activities of daily living; no difficulties in maintaining
social functioning; mild difficulties in maintaining concentration, persistence, or pace; and there
was insufficient evidence to establish the presence of episodes of decompensation each of
extended duration. Dr. Dudley further opined there was insufficient evidence to establish the
presence of the "C" criteria.

Along with the Psychiatric Review Technique form, Dr. Dudley completed a Mental Residual
Functional Capacity Assessment form (Exh. 9F). Claimant was found to be moderately limited
in his ability to understand and remember detailed instructions and in his ability to carry out
detailed instructions. Dr. Dudley found the claimant was not significantly limited in all other
areas.

From March 2005 through October 2005, claimant received medical treatment at Martin Luther
King/ Drew Medical Center (Exhs. 10F, 11F, 12F). Claimant received conservative medical
treatment for back and left leg pain (Exh. 12F). In addition, on June 24, 2005, claimant
underwent myocardial perfusion imaging (Exh. 11F/3-4). The findings were as follows:

- Sub-optimal rest/exercise stress SPECT myocardial perfusion scintigraphy, negative for
  ischemia or myocardial infarction (for the level of exercise achieved – only 68% MPR).
- Borderline low normal left ventricular function.
- Normal wall motion.

On August 10, 2005, claimant underwent an MRI of the lumbar spine (Exh. 11F/1-2). The MRI
revealed mild degenerative change of the L1-L2 disc with desiccation of the disc.

Furthermore, on October 27, 2005, claimant underwent Electromyography/Nerve Conduction
studies (Exh. 10F/2-3). These studies were conducted as a result of a work related accident the

See Next Page



claimant suffered in the 1990s involving a truck where the claimant injured his left leg and lower back. The studies revealed chronic traumatic axonal mononeuropathy of the Sciatic nerve affecting the Tibial branch more than the Peroneal in the left lower extremity. Furthermore, it was indicated that the absence of degeneration potentials and HALD regeneration potentials although sparse, are a good prognostic sign, although the lesion is longstanding.

**4.   The claimant's physical impairment of a back disorder does not have more than a minimal effect on his basic work abilities. Hence it does not significantly limit the claimant's ability to perform basic work activities and is not a severe impairment (20 CFR 404.1521 and 416.921).**

The medical evidence reflects that the claimant's back disorder is essentially minimal. Objective medical testing indicated mild to no results for a back disorder. MRI testing indicated that the claimant's degenerative disc disease is mile (Exhibit 11F). EMG/NCS testing did not show any radiculopathy in the claimant's legs (Exhibit 10F). An MRI of the claimant's right knee was negative (Exhibit 3F, p. 3). Medical records of treatment reflect sporadic visits for back pain.[5] The claimant has not been prescribed any narcotic or other pain medication for his condition. Moreover the medical records of treatment do not indicate any medical visits or complaints after July 2005.

Although an administrator for the State Agency opined that the medical evidence showed that the claimant had the residual functional capacity for medium work, this is not a medical opinion and is discounted and given little weight (Exhibit 5F).[6]

I also discount and give no weight to the testimony and written statements of the claimant because I find him not fully credible, as discussed below.

I conclude from the medical evidence and the lack of consistent treatment and prescribed pain medication that the claimant's back disorder does not have more than a minimal effect on the claimant's basic work abilities.[7] Hence it does not provide significant limitations on the claimant's ability to perform basic work activities and is not a severe impairment.

---

[5]       The claimant's attorney submitted recent records of treatment at the hearing (Exhibits 12F and 11F). These records reflect urgent care visits at the Hubert H. Humphrey Comprehensive Health Center on July 19 and March 21, 2005 (Exhibit 12F). These records reflect complaints of back pain with medication (Tramodol) given.

[6]       The administrator is a disability claim manager, titled, "single decision maker." This manager is not a licensed physician or psychologist. The use of such managers in evaluating medical evidence is part of the agency's testing modifications of the disability claim process (20 CFR 404.906(b)(1) and 416.1406(b)(1)). Since the manager is not a medical professional, his opinion is not considere acceptable medical evidence according to agency definitions (20 CFR 404.1502, 404.1513(a), 416.902 and 416.913(a))..

[7] Basic work activities are the abilities and aptitudes necessary to do most jobs. Examples of these include:

1.  Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
2.  Capacities for seeing, hearing, and speaking;
3.  Understanding, carrying out, and remembering simple instructions;
4.  Use of judgment;

See Next Page



5.      **The claimant's mental impairment of drug addiction, in remission, is not a severe impairment. It does not provide any limitations on the claimant's daily living activities, social functioning or ability to maintain concentration, persistence and pace. It has not caused any episodes of decompensation of extended duration. Hence it is not a severe mental impairment (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).**

The medical evidence shows that the claimant had a mental impairment of drug addiction, which is currently in remission. The consultative psychiatric examiner, Dr. Aguilar, diagnosed the claimant with alcohol and cocaine abuse in remission on Axis I of her diagnosis. She gave the claimant a global assessment of functioning (GAF) score of 70 on Axis V of her diagnosis (Exhibit 6F). This indicates that the claimant's mental impairment has little or no impact on his overall functional abilities. The agency reviewing psychiatric consultant, Dr. Dudley, opined that the claimant's mental impairment is not a severe impairment and does not significant limit his basic work abilities (Exhibits 9F and 8F).

The claimant is not undergoing any current mental health treatment and has not received psychiatric care in the past.

I conclude from the evidence that the claimant's drug and alcohol abuse, in remission, does not provide any limitations on his daily living activities, social functioning or ability to maintain concentration, persistence or pace. There is no evidence of any psychiatric hospitalizations or other episodes of decompensation of extended duration. Hence, based on this assessment, the claimant does not have a severe mental impairment (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

6.      **The claimant is not fully credible.**

The claimant testified his activities of daily living are limited as a result of his alleged impairment. The claimant testified that in 1994 he was hit by a city garbage truck. After being pinned for an hour, his leg and his back left side became unusable. As a result of the accident, claimant testified he experiences frequent spasms in his lower back, and he also experiences numbness in both his left leg and in his back. Claimant testified he does take medications for the pain and spasms; however, the medications cause him to feel weary and he has to lie down intermittently throughout the day. As a result of his impairments, the claimant testified that he is only able to sit and stand for a couple of hours, and he can walk for a couple of blocks.

The claimant also testified that he is able to lift two gallons of milk. He also testified to current work activity, passing out food at the Los Angeles Mission. He also acts as a volunteer for his church, coming to a food give away program and assisting with security for the crowd. He also testified to previous work activity as a telemarketer since his alleged onset of disability.

---

5.   Responding appropriately to supervision, co-workers, and usual work situations; and

6.   Dealing with changes in a routine work setting (SSR 85-28).

See Next Page



Terryl Willie Lipsey ███████████                                    Page 9 of 9

                                                                           2 8

Claimant also testified he suffers from mental depression.  He said he doesn't leave his house.[8]
The claimant stated he doesn't leave the house.  Claimant further indicated he has been clean and
sober since October 15, 2002.

I conclude, based on the inconsistencies in the claimant's statements, his lack of prescribed
medication, lack of current or recent medical treatment, his history of drug abuse, and his work
activity after his alleged onset of disability, and his appearance and demeanor at the hearing that
he is not fully credible.  Accordingly, I give his testimony and statements little weight.

**8.      Since the claimant does not have a severe physical impairment and does not have a
severe mental impairment, he does not have a severe impairment and is not disabled (20
CFR 404.1520(c) and 416.920(c)).**

**9.      The claimant is not disabled and has not been under a "disability," as defined in the
Social Security Act, from April 30, 1998 through the date of this decision (20 CFR
404.1520(f) and 416.920(f)).**

## DECISION

It is my decision that the agency determination of November 12, 2004 is affirmed.  The claimant
is not disabled.  Based on the application filed on June 18, 2004, the claimant is not entitled to
for a period of disability and disability insurance benefits under sections 216(i) and 223(d) of the
Social Security Act.  Based on the application protectively filed on May 30, 2004, the claimant is
not eligible for supplemental security income payments under section 1614(a)(3)(A) of the
Social Security Act.

Alexander Weir III
Administrative Law Judge
0 6 DEC 2006
Date: VV/K-Ddf.06

---

[8]      He also testified to regularly assisting his church food giva-away program and also going to church.

